EXCELSIOR ELECTRIC COMPANY, PLAINTIFF IN ERROR, v. WILLIAM SWEET, DEFENDANT IN ERROR.

1. The statement in a declaration of the sum claimed as damages is purely a matter of form, and an amendment in that respect, if applied for at the trial, will be granted *ex debito justitia*.

2. If the real question in controversy appears to have been fully and fairly tried and correctly settled, the court on error will not reverse for an objection that might have been avoided by an amendment of the pleadings, but will itself exercise the power of amendment.

3. In a suit against an electric light company for damages occasioned by the fall of a lamp, on an allegation that the rope, pulley and wire by which the lamp was suspended were insufficient and defective, an electrical engineer and a mechanical engineer who had experience in putting up electric lights of the kind in question, are competent witnesses as experts to describe the imperfections in the appliances by which the lamp was suspended.

4. In an action against an electric light company for damages caused by the fall of a lamp suspended over a public street, an instruction that it was the company's duty to provide a strong, sound and sufficient rope to hold the lamp securely and to provide good and sufficient materials—rope, wires and pulleys—and to have the lamp properly affixed to the rope, the rope properly run through the pulleys and properly secured to the clamp on the post, is an accurate statement of the company's duty in respect of its use of the public highway for its own purposes; and such an instruction, followed by a direction that liability for injury by reason of the falling of the lamp was not imposed simply from the non-performance of that duty, but depended upon the question whether the company exercised reasonable care in keeping the lamp properly suspended and secured, is in all respects correct.

5. The general rule is that the occurrence of the accident does not raise the presumption of negligence, but where the testimony which proves the occurrence by which the plaintiff was injured discloses circumstances from which the defendant's negligence is a reasonable inference, a case is presented which calls for a defence. *Res ipsa loquitur* discussed.

On writ of error to Hudson Circuit.

Argued before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff in error, *Charles W. Fuller* and *Hy. B. Twombley.*

*Contra, Charles C. Black* and *Edward Kenny.*

The opinion of the court was delivered by

DEPUE, J. Error is assigned upon the face of the record. The damages claimed in the declaration in the *ad damnum*

clause were the sum of $1,000. The verdict awarded the plaintiff $1,457 for his damages. For this discrepancy between the verdict and judgment thereon, and the declaration, it is contended that the judgment should be reversed. The cases cited by the counsel of the plaintiff in error (*Lake* v. *Merrill*, 5 *Halst.* 288; *Hawk* v. *Anderson*, 4 *Id.* 319) were decisions on *certiorari* to the justice's court, and were made before the Amendment act. The power of amendment conferred by this statute extends to the court in error, and will be exercised where no injury has been done to the party complained by or through error in mere form. *American Life Insurance Co.* v. *Day*, 10 *Vroom* 89. The statement in a declaration of the sum claimed as damages is purely a matter of form, and an amendment in that respect, if applied for at the trial, would be granted *ex debito justitia*. This power of amendment by the court on error extends to matters of substance as well as of form. *Price* v. *New Jersey Railroad Co.*, 2 *Id.* 229. If the real question in controversy appears to have been fully and fairly tried and correctly settled, the court on error will not reverse for an objection that might have been avoided by an amendment of the pleadings, but will itself exercise the power of amendment. *Ware* v. *Millville Fire Insurance Co.*, 16 *Id.* 177. This assignment of error must be disregarded.

The remaining assignments of error, thirty in number, were each based upon an exception taken at the trial. The number of these exceptions is due to the multiform manner in which the objections to the conduct of the trial were made and taken. An examination of these exceptions in detail is impracticable. A consideration of the subjects to which they relate will be the most advantageous method of ascertaining whether the substantial rights of the plaintiff in error were infringed upon by the trial judge in his rulings and instructions at the trial.

Briefly the facts were these: The defendant, an electric light and power company, under competent legislative municipal authority, had set up an electric plant in the town of

Harrison for the purpose of lighting the streets. One of its lights, an arc light and lamp, located on Harrison avenue near the railroad bridge, was suspended over and above the street by means of poles, ropes, wires and pulleys. The lamp was suspended over the street about fifteen feet above the surface of the street, and projected out until it reached about the middle of the driveway. The plaintiff, a market-gardener, on the 13th of May, 1892, between nine and ten o'clock in the morning, was passing along Harrison avenue to market with a load of produce. When he reached a point in the street over which the lamp was suspended it fell and struck his horse; the horse was frightened and ran away, throwing the plaintiff from the wagon, whereby he was injured.

The allegation in the declaration was that " the defendant, while it owned and controlled the said electric arc light and lamp, and the pole and ropes and pulleys by means of which the said electric arc light and lamp was hung and suspended, wrongfully, unjustly, willfully and negligently permitted the ropes and pulleys by means of which the said lamp was hung and suspended to be and become and remain rotten, weak, insufficient and defective, by reason whereof the said electric arc light and lamp fell upon the horse of the plaintiff, and so frightened and startled the horse of the said plaintiff that the said plaintiff was injured by being thrown from his wagon," &c.

To maintain the allegation of negligence, the plaintiff's testimony was directed to the condition and sufficiency of the ropes, the pulley and the wires.

When the plaintiff rested a nonsuit was applied for, and at the close of the case application was made for a direction that there be a verdict for the defendant, on the ground that there was not evidence of negligence sufficient to enable the plaintiff to go to the jury. The denial of these applications gave rise to exceptions on which the fourteenth and fifteenth assignments of error were based.

The evidence was that the lamp, which weighed twenty-six pounds and was suspended over the street, was held by a coarse-grained manilla rope of three or four strands and half

an inch in diameter, running over an unprotected iron pulley; that by means of this rope and pulley the lamp was lowered and raised, from time to time, to replace the carbon points; that the rope, in running through the pulley, had friction against the sides of the sheath to which the pulley-wheel was hung, and that it was only a matter of time before the rope must be replaced, or it would replace itself by being broken; that the life of such a rope with such use was from three months to two years. There was also competent evidence given by experts that a manilla rope such as the one described was not a proper and safe rope; and it was testified to that immediately after the lamp fell the rope was found loosened from the lamp and frayed out and unraveled for five or six inches from the end. There was also evidence tending to show that the pulley, unprotected as it was, was unsuitable, and that the suspension wires used had not " the stoutness or durability to have a lamp like that hanging on it."

The general rule is that the occurrence of an accident does not raise the presumption of negligence; but where the testimony which proves that the occurrence by which the plaintiff was injured discloses circumstances from which the defendant's negligence is a reasonable inference, a case is presented which calls for a defence. *Bahr* v. *Lombard, Ayres & Co.*, 24 *Vroom* 233. Thus, in *Byrne* v. *Boadle*, 2 *H. & C.* 722, the plaintiff, walking in the public street in front of the defendant's shop, was injured by a barrel of flour which fell upon him from a window above the shop; in *Kearny* v. *L. B. & C. Ry. Co.*, *L. R.*, 5 *Q. B.* 411; *S. C., L. R.*, 6 *Id.* 760, the plaintiff, passing along the highway under a railway bridge of the defendant, was injured by the falling of a brick from the top of one of the pilasters on which one of the girders of the bridge rested; and in *Mullen* v. *St. John*, 57 *N. Y.* 567, a building which was in the course of erection by the defendant fell into the street and injured the plaintiff, who was passing by. In each of these cases it was held that from the happening of such an accident, in the absence of explanatory circumstances, negligence will be presumed, and the burden is upon

the defendant of showing ordinary care.   In *Thomas* v. *Western Union Telegraph Co.,* 100 *Mass.* 156, the fact that a telegraph wire was found swinging across the highway at such a height as to obstruct and endanger ordinary travel, whereby the plaintiff's horses were injured, unexplained and unaccounted for, was in itself evidence for the jury on the issue of negligence on the part of the defendant.   Other cases of like import are cited in *Big. Lead. Cas.* 578, *notes to Byrne* v. *Boadle; 1 Rul. Cas.* 206, *notes to Davis* v. *Sanders; Smith Neg.* 245, 249; *Poll. Torts* 422.   The principle which controlled in these cases is a presumption of negligence *res ipsa loquitur,* a phrase which, as was said by Mr. Justice Garrison in Bahr *v.* Lombard, Ayres & Co., imports that in each case there must be "something in the facts that speaks of the negligence of the defendant;" that is, that the thing which caused the injury was under the management of the defendant or his servants, and the accident was so unlikely to occur if proper care had been exercised as to justify an inference that it was due to some neglect of duty.   See *Scott* v. *London Dock Co.,* 3 *Hurlst. & C.* 596.   It would seem within the principle upon which the cases cited were decided that the fall of a lamp of the weight of the lamp in question, suspended over a public street, without any explanatory evidence, would raise a presumption of negligence *res ipsa loquitur* sufficient to put the defendant on the defence.   But it is unnecessary to pursue this subject, for the judge expressly instructed the jury that no presumption of negligence of the defendant arose from the mere proof of the occurrence of the accident, and that the burden was on the plaintiff to prove the fact of its negligence *ab extra,* and there was sufficient affirmative proof in the evidence above referred to with respect to the inadequacy and insufficiency of the appliances by which the lamp was held to make a case of negligence on the defendant's part to go to the jury.   Those assignments of error are not sustained.

The assignments of error Nos. 1 to 13, inclusive, relate to the rulings of the judge admitting the evidence of Robert H. Burk and Henry Holtsman.

Burk was an electrical engineer and electrician of considerable experience. He was four and a half years with the United States Electric Light Company of Newark, one and a half years with the United States Illuminating Company of New York, one and a half years with the Westinghouse Electric Manufacturing Company, two years with the Newark Electric Light Company, and for nineteen months was the superintendent of the defendant company. At the time of his examination he was employed as electrician by the New Jersey Consolidated Traction Company. For the twelve years he had been engaged in the business of electrician it was the only business he had followed. By his practical experience the witness had become familiar with the construction, practical operation and details of the working and management of electrical apparatus.

The witness described the manner in which the lamp was suspended and the appliances which were used for that purpose. He was permitted, under objection, to describe the imperfections in the rope, pulley and wires, and explain why their use made an unsafe support for the lamp, and to express an opinion on these subjects.

Holtsman was a mechanical engineer, and had been employed at Hewes & Phillips' iron works for ten years. This witness had put up twenty-five or thirty electric lights for his employers, but his experience had been largely as a mechanical engineer, and it must be borne in mind that the examination of these witnesses related to the mechanical contrivances by which the lamp was suspended, and not to the adaptability of these structures to transmit electricity. He was permitted, under objection, to testify that a manilla rope such as was used was not a proper and suitable rope to sustain such a lamp, for the reason that a three-strand rope having three projections comes in contact with the pulley much harder than would a smoother surface, and thereby would be worn out quicker, causing the lamp to fall; and that a white cotton rope, which is woven closer, is a better material; and that a covered pulley, such as is in use, is better than a plain pulley, such as

was used by the defendants, for the reason that the former protects from the weather and would prevent the sliding of the rope and the consequent friction which would occasion wear.

These witnesses were experts with respect to the subject-matter on which they were examined, and the opinions of such witnesses are competent evidence whenever such testimony is reasonably necessary to give the court and jury a fair or intelligible understanding of the subject-matter in controversy. The examination of these witnesses allowed by the court was not carried beyond the limits of the rules regulating the admission of expert testimony.

Of the remaining of the assignments of error, Nos. 16 to 22, inclusive, apply to the charge of the court as delivered, and Nos. 23 to 30, inclusive, to the refusals to charge as requested.

In his charge the learned judge instructed the jury that the defendant maintained its lamps in the streets of Harrison under legislative authority, and that the company's structures, such as posts, lamps, wires and ropes, were rightfully upon the streets; that the burden of proving the negligence of the defendant was upon the plaintiff; that the occurrence of the accident raised no presumption of negligence on the part of the defendant, and that the degree of care required of the defendant was ordinary care, having regard to the situation and business the defendant was engaged in.

.With respect to the duty imposed by law upon the defendant, the learned judge used this language: " It was the duty of the defendant to provide a strong, sound and sufficient rope to hold the lamp securely suspended in its place. But that principle does not go to the extent of making them liable in all cases, if the lamp should fall. The complaint is that the rope was weak, was insufficient, rotten or defective; that the wires were in that condition; that the pulley was not a proper pulley. Now, it was the duty of the defendant to furnish and provide good and sufficient materials, rope, wires and pulleys, to have the lamp properly affixed to the rope, the rope properly run through the pulleys and prop-

erly secured to the clamp on the post, and to use reasonable care in keeping them secured in that way; and if the defendant did not exercise this reasonable care and diligence and prudence in providing these things in this way, and did not use or exercise reasonable care in keeping them in this condition, in keeping the lamp properly suspended, properly through the pulley, properly secured to the post, and by reason of the want of this reasonable care, the lamp fell upon the plaintiff's horse, and thereby the accident occurred, resulting in the injury to him, if the plaintiff was without fault, contributing to the accident, the defendant would be responsible in damages. * * * The evidence must be such that the jury can conclude that the accident was the result of negligence on the part of the defendant; that is, the result of carelessness on the part of the defendant in failing to exercise ordinary care in keeping this lamp suspended upon pulleys and ropes of sufficient strength and soundness, and in failing to exercise ordinary care, to make repairs and secure it in its position and render it safe as to travelers over the street. * * * In considering the matter of negligence of the defendant, you have a right to consider whether this rope was strong enough to sustain that lamp in the manner in which it was necessary to be suspended and sustained there, and you have a right to regard the evidence in this case that has been offered as applicable to the character of rope which is used there." And he added, by way of illustration: "Otherwise, the defendants could use a string if they saw fit."

The above extracts fairly represent the judge's charge on the subjects to which the exceptions and assignments of error apply.

The learned judge did not charge that the defendant was an insurer of the safety of persons using the highway against injuries from the falling of its lamps. His instruction was that the defendant's duty was to provide a strong, sound and sufficient rope to hold the lamp securely, and to provide good and sufficient materials, rope, wires and pulleys, to have the lamp properly affixed to the rope, the rope properly run

through the pulleys and properly secured to the clamp on the post.   This we think was an accurate statement of the defendant's duty in respect of its occupation of the public highway for its own purposes.   But the judge did not instruct the jury that liability for injury by reason of the falling of the lamp was imposed on the defendant simply from the non-performance of that duty.   He expressly told the jury that the law did not go to the extent of making the defendant liable in all cases if the lamp should fall, and instructed them that the liability of the defendant depended upon whether or not it exercised reasonable care in keeping the lamp properly suspended and secured, and that the defendant's liability would arise if, by reason of the want of reasonable care, the lamp fell upon the plaintiff's horse.   This instruction, we think, was correct.   The criticism upon the charge and the admission of evidence in some of the exceptions, that the clamps and wires were not comprised within the terms of the declaration, can be of no avail.   The gravamen of the plaintiff's suit was that the manner in which the lamp was suspended over the street made it unsafe, whereby it fell, &c.   This averment in substance included all the apparatus by which the lamp was suspended and secured.   If there was any imperfection in the declaration in that respect, such imperfection may be removed by an amendment.

The requests to charge which were refused by the judge relate chiefly to matters of evidence, and so far as they relate to legal propositions are immaterial or were covered by the charge as delivered.

Part of the brief of counsel of the plaintiff in error is devoted to the discussion of matters of fact—the weight of evidence and the unreasonableness of the verdict.   We cannot consider matters of fact of that nature on writ of error.

All the exceptions and assignments of error thereon have been examined, and finding no error on the record, the judgment should be affirmed.