G. D. YOUNGLOVE AND C. B. YOUNGLOVE, PARTNERS DOING BUSINESS UNDER THE FIRM NAME OF G. D. YOUNGLOVE & SON, PLAINTIFFS IN ERROR, VS. WILLIAM M. KNOX, DEFENDANT IN ERROR.

1. In replevin where the verdict for plaintiff finds as damages only interest upon the value of the property from the date it was taken by defendant, error, if any, in admitting evidence as to profits that might have been realized by plaintiff from the property while it was detained, is harmless, it affirmatively appearing that such evidence in no way affected the verdict.

2. Where the evidence in replevin shows that the property sued for with other property was taken into defendants possession at the same time and in the same manner, and plaintiff claims it was taken forcibly and without his consent, and defendant claims that it was voluntarily delivered to him in payment of a debt, evidence that plaintiff recovered the other property in another suit wherein defendant permitted the judgment to be taken without a defense being made, is relevant and admissible.

3. Error in permitting an improper question is harmless if the answer given in response thereto contains no incompetent testimony.

4. Where the allegations of an answer and a cross bill, filed by the defendant in a common law action in another suit in equity wherein such defendant and the plaintiff in the common law action were parties both to the original and the cross bill, conflict with the testimony of the defendant in the common law suit upon material matters, such answer and cross bill or the matters therein conflicting with such testimony are admissible as evidence in the common law suit.

5. Where assignments of error are predicted upon the giving or refusal of instructions requiring statements of the substance of the testimony upon which they were based in

order to determine their propriety such statements must be set forth in the bill of exceptions and abstracts in connection with the instructions, or the Supreme Court can not under its rules consider them.

6. Where the abstracts of record do not purport to set forth all the instructions given by the court, and it appears therefrom that other instructions than those set forth were given, the Supreme Court will be bound to presume that requested instructions were properly refused because embraced in substance in the instructions given.

7. An assignment of error alleging generally that the court erred in giving two or more instructions will be considered by an appellate court no further than to ascertain, that one of such instructions was properly given, where the instructions assert separate and distinct propositions of law.

8. In an action of replevin an instruction to the effect that to enable plaintiff to recover it must appear from the evidence that he was entitled to the possession of the property sued for or some of it at the time suit was brought is not erroneous.

9. Where in an action of replevin the affidavit and declaration described the property sought to be recovered. consisting of several different items of the alleged total value of $1,500, but affixed no seperate valuation upon each item, and upon the trial the jury found for. the plaintiff each item of the property sued for affixing to each a. specific valuation amounting in the aggregate to $1,670; the trial court was not authorized to permit the declaration to be amended after verdict by changing the alleged value of the property to a sum exceeding the amount found by the jury, so as to authorize the entry of a judgment for the valuation so found.  In such a case the court should grant a new trial upon permitting an amendment of the nature stated.

10. The ad damnum clause of the declaration in an action for the recovery of specific goods and chattles does not cover their value, but only the damages claimed for their detention.

11. Where assignments of error properly raise the question of the sufficiency of the evidence to support the verdict, they cannot be considered unless all the evidence is presented by an evidentiary bill of exceptions properly made up, and abstracted if the cause is to be determined upon abstracts of the record.

Writ of error to Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the court.

W. W. Hampton, for Plaintiffs in Error.

R. L. Anderson, for Defendant in Error.

PER CURIAM.

This cause was referred by the court to two of its commissioners, Messrs. Maxwell and Glen, for investigation, who report that that judgment of the Circuit Court ought to be reversed unless a remittitur is entered by the defendant in error, as hereinafter stated.

On March 27th, 1888, defendant in error instituted an action of replevin against the plaintiffs in error in the Circuit Court of Alachua county, to recover certain horses, buggies, carriages, &c., alleged in the affidavit to be of the value of $1,500. The property was redelivered to defendants upon their forthcoming bond. The declaration, subsequently filed, averred that defendants on the

twenty-fifth day of March, A. D. 1888, wrongfully took the said personal property, and wrongfully detained the same from the possession of the plaintiff; that said property was of the value of one thousand five hundred dollars, and it claimed two thousand dollars damages. A plea of not guilty was filed, and a trial had on May 12th, 1896, resulting in the following verdict in plaintiff's favor: "We, the jury, find the plaintiff entitled to right of possession of said property as described, viz:

| | | |
|---|---:|---:|
| One brown horse, name Colt, valued at.........$ | 175 | 00 |
| One bay horse, called the Dupree horse, valued at | 125 | 00 |
| Two gray horses named Joe and Bob, valued at. | 125 | 00 |
| One mare named Mary, valued at.............. | 200 | 00 |
| One bay horse named Sealim, valued at...... | 175 | 00 |
| Three top buggies, valued at................. | 195 | 00 |
| One three-seated hack, valued at............. | 65 | 00 |
| Two carriages, valued at ................... | 200 | 00 |
| One one-horse wagon, valued at.............. | 40 | 00 |
| Three saddles and bridles, valued at.......... | 15 | 00 |
| Four sets single harness, valued at........... | 30 | 00 |
| Three sets double harness, valued at.......... | 50 | 00 |
| | $1,670 | 00 |

The total amount sixteen hundred and seventy dollars with interest at eight per cent. per annum from date of dispossession, March 25th, 1888, up to present date."

Prior to the rendition of judgment the plaintiff moved to amend his declaration so as to allege the value of the property to be $1,700, and also to increase the damages claimed to $3,000, which motion was granted, and the amendments duly made. A motion of defendants for a new trial was denied, and likewise a motion in arrest of

judgment. Judgment was entered on the verdict that the plaintiff recover from defendants the property, and $1,085, the interest upon its value as fixed by the jury from March 28th, 1888, to day of trial, as damages for its detention and also against the defendant and the sureties upon the forthcoming bond for $1,670, the value of the property as fixed by the verdict. From that judgment the present writ of error was taken.

I. The first assignment of error alleges error in permitting the following question to be propounded to W. M. Knox, the plaintiff: "State what income, net, you were realizing from the property sued for on the 25th day of March, 1888?" The witness answered "I was receiving about $5.00 a day net." It appears from the verdict rendered by the jury that the only element of damage found by them was interest upon the value of the property from the time it was taken. They allowed nothing whatever for loss of profits upon its use. It affirmatively appears, therefore, that the defendants were not prejudiced by the ruling here complained of, even if erroneous, as it in no way affected the verdict.

II. The second and third assignments of error are argued by counsel for plaintiffs in error together. Plaintiff was asked the following question on direct examination: "Did the defendants on or about the 25th of March, 1888, obtain possession of any other property belonging to you besides that described in the declaration of this case? If so, state all the facts showing when, where and under what circumstances." This question was answered by the witness as follows: "He did obtain other property in the same manner and at the same time that he took the property described in the declaration.

He took $43.64 worth of cabbage crates, thirty bushels of corn, a keg of nails, 6 or 7 buggy robes, 7 halters, 5 buggy whips, 3 bales of hay, and a new top buggy that had not been used." G. D. Younglove, one of defendants, on cross-examination, was asked the following question: "Did Knox bring suit in the County Judge's court after you took possession of the crates, the feed, whips, and other articles, for recovery of same, and obtain judgment against you therefore?" He replied as follows: "He commenced suit against me and I let it go by default as my lawyers advised me it was not worth fighting." Both questions were objected to by defendants, but the court overruled the several objections, and the sole ground of objection urged in this court is that the evidence sought was outside the issues on trial. The answers to these questions related solely to other property obtained *in the same manner and at the same time* as that described in the declaration. Error in permitting an improper question is harmless, if the answer given in response thereto contains no incompetent testimony. Chicago City Ry. Ry. Co. v. Van Vleck, 143 Ill. 480, 32 N. E. Rep. 262; Goodrich v. McClary, 3 Neb. 123. Plaintiff testified that he was the owner and in possession of the property sued for, together with the other property here inquired about, at the time defendants took possession, and that defendants took forcible possession thereof from him, without his consent. Defendants did not deny that plaintiff was the owner of such property up to the time they took possession. G. D. Younglove testified that defendants purchased all the property from plaintiff and that he voluntarily delivered same to them at the time plaintiff claimed they took forcible possession. It was clearly admissible

for the plaintiff to show that other property obtained in the same manner and at the same time as the property in dispute was surrendered by defendants without contest, as that fact would tend to rebut the defendants' claim of purchase, and the answers to these questions, taken together, tended to prove that fact. No contention is made as to the force or effect of this testimony after its introduction, but the sole contention is that it was not properly admissible.

III. The fourth assignment of error alleges error in permitting the introduction in evidence, in rebuttal, of the bill in a chancery suit of A. G. Hester against W. M. Knox and G. D. Younglove & Son, the answer of G. D. Younglove & Son thereto, and a cross-bill filed by them in said suit against Hester and Knox. The suit on trial was instituted on March 27th, 1888, and it would seem from the abstract that Hester's bill was not filed before before December 27th, 1888. The bill sought foreclosure of a mortgage alleged to have been made by Knox to Hester on December 21st, 1887, embracing "seven head of horses, two carriages, one hack, three buggies and harness and outfit for the same" as well as a certain parcel of land, securing an alleged indebtedness of $1,000 and interest. It alleged the execution of a prior mortgage on July 20th, 1887, by Knox to G. D. Younglove & Son, to secure the sum of $437.77, including the property mortgaged to Hester; that the last mentioned mortgage had been paid in full, but that on March 25th, 1888, G. D. Younglove & Son took forcible and unlawful possession of the property included in complainant's mortgage, without the consent of Knox or complainant, and continued to retain the same. The bill contained other allegations not mate-

rial to be stated here, and prayed for foreclosure and other relief. G. D. Younglove & Son filed a sworn answer to the bill traversing in terms its substantial averments, including the averment that the mortgage given them by Knox had been paid and discharged, but averring that they acquired possession "of whatever property they did acquire" from Knox by surrender thereof to them by him in settlement of his indebtedness. They denied that all of the property covered by complainant's mortgage or by their mortgage, came to their possession, and averred that only part of the property covered by complainant's mortgage came to their possession; "that three head of horses, worn out, broken down, and greatly used up," two single buggies, two carriages, one three-seated wagon, three sets double and two sets single harness were all that came to their possession. The theory of the answer evidently was that defendants' mortgage, as to complainant, was not extinguished, and on that theory Younglove & Son also filed a cross-bill. The cross-bill contains similar averments to the answer, and it states the settlement between Knox and Younglove & Son as follows: "That on or about the 28th day of March, A. D. 1888, the defendant Knox was indebted to them in a large sum of money over, above and besides the amount represented by note and mortgage herein above referred to; that the indebtedness outside of that secured by the mortgage was for feed, grain, hay, and so on, and was increasing at such a rate that orators refused to advance more to the defendant Knox, and asked that he make a settlement, whereupon a settlement was had by and between orators and the defendant Knox of all of their mutual claims and accounts, and in said settlement this note and mortgage sued on,

was included, and the defendant turned over and delivered to orators in settlement of his indebtedness to them, two (2) single buggies; two (2) carriages and one three (3) seated wagon; three sets double harness; 2 sets single harness, all of the above being much used and in a generally worn out and dilapidated condition, and three head of horses covered by their mortgage." Previous to the introduction of this documentary evidence G. D. Younglove, on the part of defendants, had testified that *all* of the property embraced in the declaration was sold and turned over to defendants by Knox in settlement of his indebtedness to them. In addition to the property described in the answer, and stated in the cross-bill to have been taken in settlement of the indebtedness, there was embraced in the declaration three horses, one buggy, two sets of single harness, one one-horse wagon and three saddles and bridles. The only claim set up by defendants to the property sued for was through the alleged settlement claimed to have been made with them by Knox, and it was certainly competent to show, in rebuttal of Younglove's testimony, the admissions of the defendants tending to prove that the alleged settlement did not include all the property sued for, even though made in a suit in equity instituted subsequently to the replevin suit. If the answer admitted in evidence was not susceptible of construction as containing the same admission as the cross-bill, and therefore properly admissible in evidence on the same ground, it is not perceived that there is anything in it tending to the prejudice of the defendants which would require reversal because of error in admitting it in evidence. If its allegations tended to show that all the property was taken in settlement as claimed

by defendants on the trial, it was actually beneficial to them in corroboration of their defense, and if it was silent on the subject, it could work no harm to them. The rulings admitting all of the documents mentioned are embraced in a single assignment of error, and it is not claimed in the argument that any particular document was improperly admitted, but that the entire proceedings in the Hester suit were inadmissible because those proceedings were instituted subsequently to the replevin suit, and because they had no tendency to contradict the testimony of G. D. Younglove on the trial. The objections taken in the argument are as we have seen untenable.

IV. The fifth assignment of error alleges error in refusing to strike out and exclude the proceedings referred to under the preceding assignment, and some other testimony, but the abstract does not show that a motion to strike such evidence was made.

V. The sixth, seventh, eighth, ninth, tenth, eleventh and thirteenth assignments of error relate to charges given or refused, but in no case does any statement of facts appear as a predicate for any charge so given or refused, and for that reason none of these assignments can be considered. Jacksonville St. R. C. v. Walton, 42 Fla. 54, 28 South. Rep. 59; Burt v. Florida Southern Ry. Co., 43 Fla. 339, 31 South. Rep. 265. Besides, the abstract does not purport to give us all the charges of the court, but only those that were excepted to; nor does it show that the refused instructions were not embraced in the charges actually given. It does appear from the abstract that other instructions were given. Under these circumstances this court would be bound to presume that

the requested instructions were properly refused because embraced in substance in the charge given.

VI. The twelfth assignment of error is as follows "The Circuit Judge erred in giving to the jury the written charge and instructions of the court, numbered 1, 2, 5, 6 & 7." This assignment is general, alleging error in giving five several instructions. These instructions assert separate and distinct propositions of law, and according to the practice prevailing in this State, as announced in numerous decisions, if one or more of them are found to have been properly given, the assignment of error as here framed must fail. The second instruction, to the effect that to enable plaintiff to recover it must appear from the evidence that he was entitled to the possession of the property sued for, or some of it, at the time the suit was brought, announces a correct proposition of law applicable to the case, and the court did not err in giving it. Holliday v. McKinne, 22 Fla. 153. This conclusion disposes of the twelfth assignment of error under the rule above announced.

VII. The fourteenth assignment of error is that the court erred in denying defendants' motion for new trial. The first twelve grounds of the motion are not argued, except with reference to previous specific assignments of error already disposed of, and need not be further considered. The thirteenth ground is that the verdict is excessive and greater than the amount sworn to by plaintiff in his replevin affidavit. This ground may be considered in connection with the fifteenth assignment of error which presents the same question, and the sixteenth, which questions the ruling of the court permitting an

48 S. C.

amendment of the declaration after verdict. It is unnecessary to consider whether a mere excess over the amount sworn to *in the affidavit* could be a ground of objection to a verdict, where the allegations of the declaration would warrant a verdict for the valuation found, as in this case both the affidavit and the declaration stated the valuation of the property at $1,500. The jury found the property to be worth, in the aggregate, $1,670, wihch exceeded the valuation placed upon it by the plaintiff by $170, and the court permitted an amendment of the declaration, after verdict, so as to increase the valuation stated therein to $1,700. The question now presented is, could this amendment be permitted, against the defendants' objection, without setting aside the verdict? In the case of Burt v. Florida Southern Ry. Co., decided at last June term (31 South. Rep. 265) it was held that trial courts have discretionary power to permit amendments of pleadings, even after verdict, in furtherance of justice, but that such power should be more cautiously exercised after verdict than in cases where the application is made before verdict. It was further said in that case that where an amendment after verdict makes a new issue, a new trial ought ordinarily to be granted, unless under very special circumstances. It was undoubtedly the rule at common law that an amendment to a declaration, increasing the damages claimed, would not be permitted after verdict, without granting a new trial. Tomlinson v. Blacksmith, 7 Term Rep. 132; Day's Common Law Practice, 218. Our statute of amendments may, and no doubt does, give the courts greater power with respect to amendments than they possessed by the common law, and this court in Cooper v. Livingston, 19 Fla. 684, held that it applied so

as to authorize the amendment of the *ad damnum* clause of a declaration after verdict. In that case, however, the action was upon a promissory note on proof of which a larger must must be due than was stated in the *ad damnum* clause, and under those circumstances such clause was formal, which after verdict might have been amended to conform with the real claim set forth in the body of the declaration. An amendment under such circumstances would be eminently proper, because there could be no possibility of the defendant having been misled by the *ad damnum* clause, or prejudiced by the amendment. Excelsior Electric Company v. Sweet, 59 N. J. L. 441, 31 Alt. Rep. 721, overruling same case, 57 N. J. L. 224, 30 Atl. Rep. 553. In the latter case the statutes of New Jersey relating to amendments are set out. See, also, Taylor v. Jones, 42 N. H. 25; Pierce v. Northey, 14 Wis. 9; Kenyon v. Woodward, 16 Mich. 326; Corning v. Corning, 6 N. Y. 97; Elting v. Campbell, 5 Blatch. 183. Under the circumstances of this case we are constrained to hold that the amendment should not have been permitted without granting defendants a new trial. Both the affidavit and declaration had apprised them that plaintiff did not intend to claim a greater valuation of the property sued for than $1,500. Section 1712 of the Revised Statutes required plaintiff to state the *true value* of the property in his affidavit, and he placed it at $1,500. The defendant may well have relied on this statement, repeated in the declaration, as showing that a greater valuation would not be claimed, and, on that assumption, have neglected to produce evidence as to value which they might have obtained. The judgment should be so modified as to limit the recovery to the amount claimed. Burton v. Cochran, 5 Kan. App. 508.

The fourteenth ground of the motion for new trial is that the verdict is excessive because it exceeds the damages alleged in the *ad damnum* clause of the declaration. This ground is without merit. The *ad damnum* in an action for the recovery of specific goods need not cover their value, but only the damages claimed for their detention. Anderson v. Carlin, 24 Fla. 199, 3 South. Rep. 577. The declaration, before its amendment, claimed $2,000 damages, and the damages awarded amounted to $1,085.

The remaining grounds of the motion, except the sixteenth which is not argued, would require for their consideration reference to an evidentiary bill of exceptions, and the abstract does not undertake to abstract the evidentiary bill of exceptions, or set forth its contents in such a manner as to enable this court to consider it under the rules.

VIII. What has been said in the sixth paragraph of this opinion covers all the points presented under the remaining assignments of error.

The judgment will be reversed and a new trial granted, unless the defendant in error, within thirty days after the filing of the mandate in the court below, shall file therein a remittitur, electing to rely on his judgment for the value of the property and damages, and waiving his right to sue out a writ of possession for the property, and remitting from the amount awarded in said judgment as the value of the property the sum of $170, and from the amount awarded as damages for the detention thereof, interest on said sum of $170 from March 25th, 1888, to May 12th, 1896; and as so modified the said judgment shall stand affirmed, if such remittitur is filed within said period. Defendant in error must pay the costs of this court.